Eddie VANCE, Jr., Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A04–1011–CR–701.

Court of Appeals of Indiana.

June 1, 2011.

Transfer Denied Aug. 18, 2011.

Alan K. Wilson, Muncie, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Eddie Vance, Jr. (Vance), appeals the trial court's decision to recommit him to the Department of Correction (DOC) following a guilty plea.

We affirm.

### ISSUE

Vance raises one issue for our review, which we restate as the following: Whether the trial court had personal jurisdiction when it entered an order recommitting Vance to the DOC.

### FACTS AND PROCEDURAL HISTORY

On August 4, 2005, the State filed an Information under Cause Number 18C02–0508–FB–13 (Cause No. FB–13) in Delaware County Circuit Court 2 charging Vance with possession of cocaine, a Class B felony, Ind.Code § 35–48–4–6; resisting law enforcement, a Class A misdemeanor, I.C. § 35–44–3–3; and driving while suspended, a Class A misdemeanor, I.C. § 9–24–19–2. On December 6, 2005, the State amended the Information, adding an habitual offender Count, I.C. § 35–50–2–8. At the time Vance was charged in Cause No. FB–13, he had been on probation for an unrelated felony conviction for possessing cocaine and resisting law enforcement under Cause Number 18C01–0306–FA–13 (Cause No. FA–13) in Delaware County Circuit Court 1. Because he violated his probation by being charged in Cause No. FB–13, Vance's probation was revoked on November 14, 2005, and he was ordered to serve an aggregate of eight years of his original sentence under Cause No. FA–13.

On October 23, 2006, Vance entered into a plea agreement with the State in Cause No. FB–13, whereby he agreed to plead guilty to possession of cocaine as a Class B felony with a fixed sentence of four years in the DOC, and the State agreed to dismiss the remaining charges. On December 18, 2006, the trial court accepted the plea agreement and sentenced Vance to four years, to be served consecutively to any sentence imposed in Cause No. FA–13. Vance served his revoked sentence in Cause No. FA–13; however, the DOC never turned Vance over to serve his sentence under Cause No. FB–13. Instead, he was released to parole under Cause No. FA–13 on May 31, 2007.

In early 2008, Vance was charged again in Delaware County Circuit Court 1 with domestic battery, a Class A misdemeanor, under Cause Number 18C01–0801–FC–8 (Cause No. FC–8). On April 30, 2008, Vance was sentenced to one year executed and was released to parole in December of 2008.

On May 31, 2009, Vance was charged in Delaware Circuit Court 5 in yet another Cause Number: 18C05–0909–FB–15 (Cause No. FB–15), and received a three year sentence in that case in November 2009. Allison Licht (Licht), a probation officer for Delaware County Circuit Court 2, was assigned to conduct a pre-sentence investigation (PSI) report in Cause No. FB–15. During the preparation of the PSI report, she discovered that Vance had been released from the DOC to parole in December of 2008 after having served his sentence from Cause No. FA–13 but before serving his sentence of four years under Cause No. FB–13. The DOC informed Licht that the reason Vance had not served his sentence in Cause No. FB–13 was because the DOC had not received an abstract of judgment in Cause No. FB–13.

On October 29, 2010, the State filed a request for status hearing and to hold Vance without bond. The request alleged

that Vance had been erroneously released from the DOC after serving his sentence in Cause No. FA–13 but before beginning his sentence in Cause No. FB–13. The trial court ordered Vance to be held without bond and set a hearing for November 8, 2010. At the hearing, Vance testified that he had informed prison officials at the DOC that they were going to release him before he had served his sentence for Cause No. FB–13. He also testified that his case manager told him that the sentencing Order for Cause No. FB–13 was not on file with the DOC, and that he was being released to parole in 2007 under Cause No. FA–13.

At the conclusion of the hearing, the trial court entered an Order, finding that Vance had not served his sentence under Cause No. FB–13, remanding him to the custody of the DOC to serve the four year sentence imposed on December 18, 2006. That same day, the trial court amended the Order by adding that his sentence would be served "concurrently with any other existing sentence imposed." (Appellant's App. p. 65).

Vance now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ Vance argues that the trial court did not have personal jurisdiction to order the execution of his sentence in FB–13 after he was released by the DOC. Jurisdiction of the person "refers to the particular parties who are brought before the court, and the right of that particular court to exercise jurisdiction over those parties." *Twyman v. State*, 459 N.E.2d 705, 707 (Ind.1984). A challenge to personal jurisdiction may be raised either as an affirmative defense or in a motion to dismiss.

*Brockman v. Kravic*, 779 N.E.2d 1250, 1255 (Ind.Ct.App.2002). Judgments entered in the absence of personal jurisdiction are voidable, and a timely objection is required to preserve a challenge to the lack of personal jurisdiction or jurisdiction over the case. *Id.* Thus, a defendant can waive personal jurisdiction by failing to make a timely objection. *Truax v. State*, 856 N.E.2d 116, 122 (Ind.Ct.App.2006).

■ During the hearing on November 8, 2010, Vance argued that imposition of the sentence would violate his rights against double jeopardy under the Indiana and United States Constitution.[1] Vance did not, however, argue that the trial court lacked personal jurisdiction to order the execution of his sentence. Therefore, he has waived this argument on appeal.

■ Waiver notwithstanding, Vance's argument still fails. While there are no cases that are directly on point, Vance directs us to *Taylor v. State*, 171 Ind.App. 476, 358 N.E.2d 167, 172 (1967), *reh'g denied*, for the proposition that the imposition of his sentence offends basic notions of fundamental fairness. In *Taylor*, even though we held that the defendant in that case had not shown a deliberate attempt of the trial court to withhold his sentence, we observed that

> the availability of discharge for a person found guilty of a criminal offense but not promptly sentenced is limited to circumstances where the record discloses a deliberate attempt upon the part of the court to withhold sentence or where the facts disclose a delay in the imposition of sentence without excuse or justification for such a period of time as to offend

---

1. Vance's counsel argued: "I would suggest first of all, that re-sentencing [Vance] is [a] violation of both the double jeopardy clause[s] of [ ] the Federal and State Constitutions, but furthermore it's clearly not [Vance's] fault." (Transcript p. 25).

basic notions of fundamental fairness if the court were to then impose sentence. *Id.* at 172.

Vance also analogizes his case to *Kindred v. State,* 172 Ind.App. 645, 362 N.E.2d 168, 169 (1977), *reh'g denied, trans. denied,* where Kindred appealed the trial court's denial of his petition for withdrawal of appeal bond and subsequent denial of credit towards his term of imprisonment for the period of time he was incarcerated while awaiting the disposition of a previous appeal. Kindred argued that his petition for withdrawal of appeal bond constituted a surrender and thus, the trial court had a duty to revoke his appeal bond and begin running the term of his imprisonment. *Id.* at 170. We held that Kindred's affirmative action of notifying the trial court did in fact constitute a "surrender," entitling him to have the days between the date of his motion and the subsequent commitment count as credit toward his sentence. *Id.*

Additionally, we look to *Woods v. State,* 583 N.E.2d 1211 (Ind.1992) for guidance. In that case, Woods had been released from jail while he was awaiting the resolution of his appeal. *Id.* at 1212. After Woods' conviction had been affirmed by this court and certified to the trial court, the trial court delayed 5 1/2 years before ordering that Woods' sentence be executed. *Id.* In setting aside Woods' commitment and ordering that he be discharged from incarceration, our supreme court noted that the trial court had lost jurisdiction because

> [t]hrough no fault of [Woods], the State delayed the commencement of his sentence for more than five and one-half (5 1/2) years. Thus ... the sword of Damocles dangled over the head of [Woods] for that five and one-half (5 1/2) year period. We hold that the trial court in fact lost jurisdiction over appellant by reason of this undue delay and

that the motion for discharge should have been granted ... we now hold a court loses jurisdiction if it does not act within a reasonable time after the certification of the affirmance of a conviction. *Id.* at 1212–13. One of the factors our supreme court weighed was the fact that during the 1/2 year delay, the Woods had stayed out of trouble, supported his children, and developed health problems. *Id.* at 1213.

*Kindred* and *Woods* are both distinguishable from the present case. Vance claims that like the defendant in *Kindred,* he took an affirmative step when he informed the prison officials that he still had to serve his sentence from Cause No. FB–13, and through no fault of his own, no one followed through. As such, he argues, he should be given credit time for time served after the date he completed his sentence in Cause No. FA–13. We disagree. Vance did not 'surrender' himself as the defendant in *Kindred* did. Vance was well aware of his ability to communicate directly with the trial court because he had done so on three previous occasions; specifically, he filed a *pro se* motion and two letters with the trial court in 2007. These communications, one of which was granted by the trial court, were written by Vance for his benefit, such as a request for credit time and a request for early transfer from Delaware County Jail to the DOC. Based on his previous interaction with the trial court, it is clear that had Vance informed the trial court that he had not served jail time for his sentence, the trial court would likely have responded and the issue might have been resolved.

Additionally, unlike the defendant in *Woods,* who lived a law abiding life while awaiting resolution of his case, Vance committed other crimes after he was mistakenly released from the DOC. Allowing Vance to be discharged now from the DOC or be

credited with time against his sentence would create a windfall of a sentence shorter than the one he had bargained for under his plea agreement.

Finally, Vance failed to demonstrate that the delay in his sentence was a deliberate attempt of the trial court to withhold his sentence or that the imposition of his sentence would offend basic notions of fundamental fairness. As soon as it was brought to the attention of the trial court on October 29, 2010 that he had not served his entire sentence, the trial court acted expeditiously and held a hearing shortly thereafter, on November 8. As such, we find that the trial court did not lose personal jurisdiction over Vance and acted within a reasonable time when it reordered him back to the DOC.

## CONCLUSION

Based on the foregoing, we conclude that the trial court had personal jurisdiction over Vance and acted within a reasonable time when it reordered Vance back to the DOC.

Affirmed.

DARDEN, J., and BARNES, J., concur.