IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. JUSTIN LLOYD

**Criminal Court for Davidson County**
**No. GS1045316**

_____

**No. M2026-00298-CCA-R8-CO**
_____

## ORDER

This matter is before the Court upon motion of the Defendant, Justin Lloyd, for review of the trial court's order granting the State's motion to revoke his pretrial bond. *See* Tenn. R. App. P. 8; Tenn. Code. Ann. § 40-11-144. The State opposes. For the reasons stated below, the Defendant's motion is denied.

### Procedure Governing Appellate Review

Rule 8 provides the procedural framework for obtaining appellate review of a trial court's decision regarding a defendant's pretrial release. Tenn. Code Ann. § 40-11-144. In order for this Court to conduct its review, and when there is no adequate record already on appeal, it is a defendant's responsibility to provide this Court with an *ad hoc* record of the proceeding below. Rule 8(a) mandates that any motion for review must "be accompanied by a copy of the motion filed in the trial court, any answer in opposition thereto, and the trial court's written statement of reasons, and shall state: (1) the court that entered the order, (2) the date of the order, (3) the crime or crimes charged or of which defendant was convicted, (4) the amount of bail or other conditions of release, (5) the arguments supporting the motion, and (6) the relief sought." The Defendant's motion is adequate for this Court to conduct its review.

This Court reviews release decisions of the trial court under an abuse of discretion standard. Tenn. Code Ann. § 40-26-103; *See State v. Melson*, 638 S.W.2d 342, 358 (Tenn. 1982) (trial courts have "very wide latitude in setting bail," and appellate courts "are most reluctant to second-guess" the trial court). Our supreme court has held the abuse of discretion standard of review is a "less rigorous review" of a trial court's decision and does not permit this Court to substitute its judgment for that of the trial court. *State v. McCaleb*,

582 S.W.3d 179, 185 (Tenn. 2019) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

## Background

The Defendant is charged on a general sessions warrant with aggravated assault with a deadly weapon based on conduct that allegedly occurred on August 23, 2024. According to the Defendant, his case has been bound over to the grand jury, but an indictment has not yet been issued. Upon his arrest on this charge in September 2024, the Defendant posted a $5,000 bond and was released from custody.

On August 11, 2025, the State filed a "Motion to Revoke, Increase, or Alter Bail" and, thereafter, on September 15, 2025, and October 28, 2025, filed amended motions requesting the same. The State's request was based on the fact the Defendant was arrested on approximately ten other charges since his release in this case in September 2024.

Prior to a ruling on those motions, the State filed a motion on or about October 28, 2025, to be permitted to introduce testimony from the preliminary hearing on two of charges the Defendant subsequently acquired. The trial court granted that motion. Neither the October 28th motion nor the trial court's order granting that are attached to the instant Rule 8 motion, however.

On November 7, 2025, the Defendant filed a motion asking the trial court to reconsider its ruling allowing the introduction of the proposed evidence. The State filed a response thereto on November 12, 2025. On that same date, the trial court heard the Defendant's motion to reconsider and the State's motions to revoke, increase or alter the Defendant's bail. During the hearing, the trial court denied the Defendant's motion to reconsider and entertained proof from the State and the arguments of the parties. The trial court then issued a written order on February 18, 2026, revoking the Defendant's bond.

## Applicable Law Governing Pretrial Bail

Article I, section 15 of the Tennessee Constitution guarantees a defendant the right to bail in all except capital cases. *See State v. Burgins*, 464 S.W.3d 298, 306 (Tenn. 2015); Tenn. Code Ann. § 40-11-102 ("Before trial, all defendants shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption great."). Similarly, excessive bail is expressly prohibited by Article I, section 16 of the Tennessee Constitution. *See State ex rel. Hemby v. O'Steen*, 559 S.W.2d 340, 341-42 (Tenn. Crim.

App. 1977).

Although the Tennessee Constitution guarantees a defendant the right to pretrial release, our supreme court has ruled that right is not absolute and it may subsequently be forfeited based upon the defendant's conduct. *Burgins*, 464 S.W.3d at 301. The controlling statute provides that a court may revoke and terminate a defendant's bail:

> If after the defendant is released upon personal recognizance, an unsecured personal appearance bond, or any other bond approved by the court, the defendant violates a condition of release, *is charged with an offense committed during the defendant's release*, or engages in conduct which results in the obstruction of the orderly and expeditious progress of the trial or other proceedings, then the court may revoke and terminate the defendant's bond and order the defendant held without bail pending trial or without release during trial.

Tenn. Code Ann. § 40-11-141(b) (emphasis added). Before a trial court may revoke bond under this statute, either *sua sponte* or upon motion of the State, a defendant must be afforded due process. *Burgins*, 464 S.W.3d at 307. The supreme court has promulgated the following procedure to ensure compliance with the requirements of the Fourteenth Amendment and article I, section 8 of the Tennessee Constitution:

> The defendant is entitled to 1) written notice of the alleged grounds for revocation and the date, place, and time of the hearing, 2) disclosure of the evidence against him or her, 3) the meaningful opportunity to be heard and to present evidence, 4) the right to confront and cross-examine witnesses, and 5) the right to make arguments in his or her defense. The trial court must conduct an evidentiary hearing at which the State is required to prove, by a preponderance of the evidence, sufficient ground(s) under Tennessee Code Annotated section 40-11-141(b) to support a revocation. The evidentiary hearing need not be a mini-trial of the alleged conduct constituting the ground(s) for revocation. Moreover, the requirements for the revocation proceeding shall be somewhat flexible in that the trial court shall be able to consider factual testimony and documentary proof supporting the grounds for revocation of pretrial bail. In addition to documentary proof, the State must also present testimony from a corroborating witness or witnesses as to facts supporting the allegations contained in the documents. Hearsay evidence may be admitted when the trial court finds that it is reliable. *See generally State v. Wade,* 863 S.W.2d 406 (Tenn. 1993). At the close of proof, if the trial court finds that the State has shown, by a preponderance of the evidence, that the defendant has violated a condition of release, has

3

committed a criminal offense while released on bond, or has engaged in conduct resulting in the obstruction of the orderly and expeditious progress of the trial or other proceedings, then the trial court may either revoke bail and hold the defendant until trial or continue bail with the possibility of additional conditions or an increased bond amount. In determining which option is appropriate, the trial court should consider 1) whether any additional bail conditions or an increased amount of bail would assure the appearance of the defendant at trial and protect the safety of the community under Tennessee Code Annotated section 40-11-116 and 2) the bail factors listed in Tennessee Code Annotated section 40-11-118. Revocation will be appropriate in cases where the court finds that the imposition of additional bail conditions or an increased amount of bail would not be sufficient to assure the defendant's appearance at trial or protect the public's safety.

*Id.*, at 310–11 (footnotes omitted). *Burgins* further states:

> The revocation statute provides the grounds for bail revocation but does not set forth the procedure for trial courts to follow when conducting a bail revocation proceeding. A clear procedure that complies with due process requirements and eliminates uncertainty and disparity at the trial court level is needed.

*Id.*, at 307. "[P]retrial bail revocation implicates liberty interests within the purview of the Fourteenth Amendment" and, thus, "the procedure to revoke pretrial bail must meet the requirements of due process embodied within the Fourteenth Amendment and article I, section 8 of the Tennessee Constitution." *Id.* at 306-307.

### Trial Court's Ruling

During the November 12th hearing, the trial court ruled as follows on the introduction of the testimony from the preliminary hearing on two of charges the Defendant subsequently acquired:

> Number one, at this particular proceeding, the Court is permitted to introduce what I feel to be reliable hearsay.
>
> To the extent that any cause need be shown for that decision, the cause is, as I find it, that I am not going to require a victim to come to court on multiple occasions and be subject to cross-examination by the same counsel and the same defendant on multiple occasions, and that that in the Court's view justifies presenting her testimony through the recording.

4

Number two, the proposed evidence that the State is offering meets all of the criteria for a hearsay exception but for a clear finding of unavailability.

However, the whole point of those exceptions is to ensure that there are indicia of reliability. And when there are certain indicia of reliability, there are multiple instances in which exceptions to the hearsay rule apply.

This particular piece of evidence possesses all of the indicia of reliability that former testimony would have under the rules of evidence.

The victim was present in court. Was present in the presence of the defendant. The victim offered testimony in open court. The victim was subject to cross-examination by the defendant's attorney. She was under oath.

Those are all of the indicia of reliability that would be required for a pure exception to the hearsay requirement, but for the unavailability piece.

But because I don't have to have that strict compliance in this instance, because I'm allowed to listen to reliable hearsay, I find that that evidence is reliable for this proceeding, and I am not going to require the victim to testify on multiple occasions.

I don't always accept preliminary hearing testimony, to be clear. There are instances where I don't accept it, where I require the State to bring witnesses in. But I think under the circumstances here, the requirements of the rule are satisfied.

I do disagree with your position . . . that this piece of evidence would be categorized as documentary evidence.

And I know that a lot of your argument hinged on that.

I disagree with that characterization because what I will be viewing as evidence in the case, even though the evidence is coming in in a physical form, what I am actually reviewing is the testimony that is preserved on the disc. And so I am actually viewing and hearing testimony. I am able to see the victim. I am able to sort of assess her credibility in her demeanor and body language.

So I think that this evidence is more akin to testimonial evidence than it is to documentary evidence.

And so I think a lot of the cases that you are relying on are situations in which the State sought to demonstrate a violation based upon perhaps just admission of an affidavit. That would be the type of documentary evidence that I think would be barred and would require live testimony.

But I think given the nature of the proof given here, I think this does rise to the level of the reliability – reliable hearsay that the Courts require.

The trial court then considered the recording of the preliminary hearing on the charges of domestic assault and aggravated kidnapping the Defendant received on October 2, 2025, as well as the Defendant's criminal history. Although the Defendant included the recording of the preliminary hearing with the current motion, he did not include a copy of his criminal history the State introduced as proof at the hearing. The Defendant offered no proof. In its written order revoking the Defendant's bond, the trial court ruled as follows:

The State presented an audio recording of the preliminary hearing for the new charges for the Court's review. The evidence showed that on October 2, 2025, the Defendant and his pregnant ex-girlfriend [] were involved in an altercation. She testified that she and the Defendant were at her mother's house when they began to argue. The Defendant wanted her to leave, but Ms. Strange refused because it was her mother's home. She walked into her old bedroom, and the Defendant followed her. He started throwing her to the ground. She reminded him that she was pregnant, and he replied that he did not care if the baby died. He ripped off her hoodie and pants. He told her he was hearing voices telling him to tear off her clothes and pour water on her. She made several attempts to get up, but he kept throwing her down. She tried to leave but couldn't. During the struggle, she bit him on his right arm. During the struggle, the curtains fell off the wall, and she tried hitting him with the curtain rod. She managed to open the window and call for help. As he tried to close the window, she escaped, wearing only her undergarments. She ran to her car but realized her keys and purse were inside. She sat on the front steps. Her mother saw her on the Ring camera at that time. The Defendant was distracted by the camera, and Ms. Strange was able to enter and retrieve her belongings. She had bruises on her legs and shoulder, and a scratch on her elbow. She and the police documented her injuries. She has continued to stay in contact with the Defendant through jail calls and texts.

[] After reviewing the evidence presented at the evidentiary hearing regarding the Defendant's actions on October 2, 2025, the Court finds that the State has proven, by a preponderance of the evidence, sufficient grounds under Tenn. Code Ann. § 40-11- 141(b) to support a conclusion that the Defendant committed additional criminal offenses while released on bond.

6

[] The Court also considered the Defendant's criminal history, which showed that he has failed to appear for court six times.

[] The Court has considered, in accordance with *State v. Burgins*, 464, S.W.3d 298 (Tenn. 2015), whether additional bail conditions or an increased amount of bail would assure the appearance of the Defendant and protect the safety of the community under Tenn. Code Ann. §§ 40-11-116 and 40-11-118(b). The Court concludes that additional bail conditions and/or increased bail would be inadequate to protect the safety of the public.

[] The evidence shows that while out on bond for aggravated assault, the Defendant violently assaulted his pregnant girlfriend and held her against her will. From this, the Court finds the Defendant to be a danger to the community. Beyond that, his continued criminal behavior while on bond pending disposition of a violent felony charge reflects the inadequacy of additional release conditions. The Court finds that the Defendant's criminal behavior while on bond, coupled with multiple failures to appear, shows that confinement through bond revocation is necessary to protect the public while this case is pending.

## Discussion

The Defendant argues the trial court did not comply with the procedural safeguards required by *Burgins* before revoking his bond. His main complaint centers around the fact the trial court relied on the recording of the preliminary hearing on the charges of domestic assault and aggravated kidnapping the Defendant received on October 2, 2025. Specifically, the Defendant argues *Burgins* requires the State to introduce a live witness during the revocation hearing, regardless of the type of proof being introduced. To that end, the Defendant contends the State did not properly establish that the witness who testified during the preliminary hearing was unavailable during the bond revocation hearing. *See* Tenn. R. Evid. 804. Finally, the Defendant argues the trial court denied his right to confront witnesses. In response, the State asserts *Burgins* requires a live witness only to corroborate documentary proof and that the recording of the preliminary hearing is not documentary proof. The State also asserts *Burgins* does not require compliance with Rule 804 but, instead, only mandates that any hearsay testimony be "reliable." The State argues the witness's testimony during the preliminary hearing is reliable hearsay. Finally, the State contends the Defendant was not denied his right to confront witnesses.

Based upon a review of the information provided by the Defendant, and considering the parties' arguments, this Court concludes the trial court did not abuse its discretion in revoking the Defendant's bond based on the fact he acquired new charges while released. Initially, the Court observes that, although the State introduced the Defendant's criminal

history during the hearing, it is not included in the current motion before this Court for review. And despite the fact the trial court references it in its written order, its reliance on that piece of proof does seemingly offend the requirement in *Burgins* that "the State must also present testimony from a corroborating witness or witnesses as to facts supporting the allegations contained in the documents." 464 S.W.3d at 310. The Defendant's arrest history is documentary in nature. Accordingly, *to the extent the trial court relied on that piece of evidence* before deciding to revoke the Defendant's bond, it abused its discretion in doing so.

Again, the State must prove by a preponderance of the evidence that the Defendant violated a condition of his release. The revocation hearing "need not be a mini-trial," however, and "the requirements for the revocation proceeding shall be somewhat flexible." *Id.* To that end, the trial court may consider "reliable" hearsay evidence before rendering its decision. This Court disagrees with the Defendant's argument that *Burgins* requires the State to introduce live witnesses to corroborate any proof. The Court agrees with the State instead that *Burgins* explicitly limits the requirement of a live witness when documentary proof is being introduced. *Id.* Furthermore, this Court agrees with the trial court's assessment of the nature of that recording, i.e., that it is not documentary proof.

The Court also agrees with the trial court and the State that the recording of the preliminary hearing is the type of reliable hearsay evidence contemplated by *Burgins*. During the revocation hearing, the trial court recognized the distinction between reliable and unreliable hearsay evidence: "I don't always accept preliminary hearing testimony, to be clear. There are instances where I don't accept it, where I require the State to bring witnesses in. But I think under the circumstances here, the requirements of the rule are satisfied." Finding the recording to be reliable in this case, the trial court observed: "The victim was present in court. Was present in the presence of the [D]efendant. The victim offered testimony in open court. The victim was subject to cross-examination by the [D]efendant's attorney. She was under oath." The Defendant's procedural due process rights were safeguarded. *Burgins* does not specifically require a trial court to find that a witness is unavailable under Rule 804. But it does permit flexibility in the admission of hearsay proof, so long as the trial court can attest to its reliability. The trial court did just that here.

The question before the trial court was whether the Defendant was charged with additional offenses while on bond. Supporting proof was established during the preliminary hearing on those charges and the Defendant was clearly afforded the opportunity to confront his witnesses at that time. Furthermore, the trial court acted within its discretion to fully revoke the Defendant's bond after determining, based on the testimony during the preliminary hearing on the subsequent charges, that additional bail conditions and/or an increase in the amount of the bond would be adequate to protect the safety of the public.

## Conclusion

"A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The trial court did none of that here. Accordingly, this Court finds the trial court did not abuse its discretion by revoking the Defendant's bond in this case. The Defendant's motion is, therefore, denied. Because the Defendant is indigent, costs are taxed to the State.

Easter, J., Wedemeyer, P.J., Ayers, J.

9